*Gary Dolan, et al. v. Kemper Independence Insurance Company*, No. 0084, September Term, 2017.  Opinion by Arthur, J.

**INSURANCE – EXAMINATION UNDER OATH**

The circuit court correctly held that an insured's willingness to submit to a deposition was not the equivalent of submitting to an examination under oath ("EUO") as required under his insurance policy.

Submitting to a deposition will not satisfy the requirement of submitting to an EUO, because "[a]n examination under oath and a pretrial deposition 'serve vastly different purposes.'"  *Brizuela v. CalFarm Ins. Co.*, 116 Cal. Rptr. 3d 661, 671 (Cal. Ct. App. 2004) (quoting *Goldman v. State Farm Fire Gen'l Ins. Co*., 660 So. 2d 300, 305(Fla. Dist. Ct. App. 1995)).  "The purpose of an examination under oath is to obtain information as part of the insurer's investigation of the insured's claim" – to assist the insurer in deciding whether to allow or deny the claim – "rather than for the litigation." *Id.* at 671-72.  The procedures are also different.  An EUO is not strictly subject to the rules of civil procedure. *Id.* at 672.  Additionally, the rules concerning the form and substance of a notice of deposition (Md. Rule 2-412), the place where a deposition may occur (Md. Rule 2-413), the persons who may attend the deposition (Md. Rule 2-413.1), the procedure to be followed at and after the deposition (Md. Rule 2-415), and the use of a deposition at trial (Md. Rule 2-419), all differ between depositions and EUO's.

Hence, the insured's refusal to sit for an EUO constituted a material breach under the insurance policy, and the insurance company was not obligated to pay any benefits under the policy.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0084

September Term, 2017

_____

GARY DOLAN, *et al.*

v.

KEMPER INDEPENDENCE INSURANCE
COMPANY

_____

Graeff,
Nazarian,
Arthur,

JJ.

_____

Opinion by Arthur, J.

_____

Filed: June 28, 2018

This appeal stems from a declaratory judgment action in which appellee Kemper Independence Insurance Co. sought to establish that it had no duty to pay underinsured motorist (UIM) benefits to appellant Gary Dolan. In support of its position, Kemper cited Mr. Dolan's unwillingness to participate in an examination under oath (EUO). Kemper argued that, by refusing to submit to an EUO, Mr. Dolan had breached the insurance contract. Kemper also argued that, under its policy, submission to an EUO was a condition precedent to Mr. Dolan's ability to file suit against Kemper for breach of contract.

The Circuit Court for Anne Arundel County declared that Mr. Dolan was not entitled to UIM benefits under the policy. Mr. Dolan appealed. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

The parties stipulated to the relevant facts:

On October 27, 2010, Mr. Dolan was a passenger in a vehicle operated by Windy Marie Dolan. The vehicle was involved in an accident. Mr. Dolan sustained injuries as a result of the accident.

Mr. Dolan's parents had an automobile insurance policy with Kemper. Mr. Dolan claimed UIM benefits as a "family member" under his parents' policy.[1]

Section III, Part E, of the policy that Kemper issued to Mr. Dolan's parents states, in pertinent part, as follows:

> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

---

[1] The policy defined "family member" to mean "a person related to [Mr. Dolan's parents] by blood, marriage or adoption who is a resident of [his parents'] household."

\*     \*     \*

B.     A person seeking any coverage must:

1.     Cooperate with us in the investigation, settlement or defense of any claim or suit.

\*     \*     \*

3.     Submit, as often as we reasonably require:

\*     \*     \*

b.     To examination under oath and subscribe the same.

Under Section II, Part F, of the Kemper policy, "No legal action may be brought against [Kemper] until there has been full compliance with all the terms of this policy."

Sometime in late 2010 or early 2011, Kemper became aware of the accident in which Mr. Dolan was injured. Anticipating that Mr. Dolan might make a claim for UIM benefits, Kemper requested that he give a recorded statement. Mr. Dolan's counsel denied the request.

On March 10, 2011, Kemper sent a formal request for a recorded statement via a letter to Mr. Dolan's counsel. Counsel denied that request as well.

On April 12, 2011, Kemper, through counsel, sent a written request for an EUO to Mr. Dolan's counsel. Two days later, Mr. Dolan's counsel responded by email, stating that Kemper was not entitled to an EUO until Mr. Dolan made a formal claim for UIM benefits.

2

On August 8, 2011, Kemper received a letter from Mr. Dolan's counsel. The letter represented that Ms. Dolan's insurer, Nationwide Mutual Insurance Co., had tendered its policy limits of $50,000 in settlement of Mr. Dolan's claims against her.

Under Md. Code (1996, 2006 Repl. Vol.), § 19-511 of the Insurance Article, as it read in 2011, Kemper had 60 days from August 8, 2011, to decide whether to consent to the settlement. If Kemper consented to the settlement, it would waive its right to "contest the issues of tort liability" in Mr. Dolan's action to recover on the policy. *Maurer v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 404 Md. 60, 75 (2007); *Morse v. Erie Ins. Exch.*, 217 Md. App. 1, 21 (2014), *aff'd sub nom. Woznicki v. GEICO Gen. Ins. Co.*, 443 Md. 93 (2015). If, however, Kemper refused to consent to the settlement, it was required to pay the amount of the settlement offer to Mr. Dolan in order to preserve its defenses in a UIM claim.[2]

On September 22, 2011, Kemper notified Mr. Dolan, in writing, that it would not consent to Nationwide's settlement offer. On the same day, Kemper advanced the $50,000 that it was required to pay to preserve its right to contest issues of tort liability. Mr. Dolan accepted Kemper's check, thereby triggering his UIM claim against the Kemper policy.[3]

---

[2] In 2012, section 19-511 was amended so that "an uninsured motorist insurer may consent to settlement with a tortfeasor without waiving its right to contest tort liability[.]" *Morse v. Erie Ins. Exch.*, 217 Md. App. at 22.

[3] The parties did not make an express stipulation about the date on which Mr. Dolan accepted the check. Mr. Dolan posits that he accepted the check on the date when it was "paid," which he claims was September 29, 2011.

At some point after the claim was triggered, Kemper requested an EUO. The record does not reflect what response, if any, Kemper received.

On October 28, 2011, Mr. Dolan's counsel wrote to Kemper's counsel. The letter transmitted information about Mr. Dolan's injuries, requested information about the dollar amount of UIM coverage under the Kemper policy, and asked whether Kemper would tender the policy limits. The letter confirms that by that date Mr. Dolan had made a formal claim for UIM benefits.

On November 7, 2011, Kemper's counsel wrote to Mr. Dolan's counsel. In that letter, Kemper's counsel confirmed an agreement with Mr. Dolan's counsel that Kemper was entitled to an EUO. Kemper's counsel requested dates for the EUO.

On November 13, 2011, Kemper's counsel sent a follow-up email to Mr. Dolan's counsel, offering proposed dates for an EUO. Mr. Dolan's counsel did not respond to the email.

Instead, on November 23, 2011, Mr. Dolan filed a complaint with the Circuit Court for Anne Arundel County. The complaint alleged a negligence claim against Windy Marie Dolan, the driver of the car in which Mr. Dolan was injured. The complaint also alleged a breach of contract claim against Kemper for failing to pay UIM benefits.

On December 5, 2011, counsel for Kemper spoke to counsel for Mr. Dolan to follow up on the scheduling of an EUO. Mr. Dolan's counsel said that an assistant at the firm would secure a date for the EUO. Kemper's counsel confirmed the discussion in a letter of the same date.

4

On December 9, 2011, Mr. Dolan's counsel called Kemper's counsel to inform him that Mr. Dolan had filed suit. Mr. Dolan's counsel asserted that Mr. Dolan would submit to a deposition, but would not appear for an EUO.

In a conversation with Kemper's counsel on February 14, 2012, counsel for Mr. Dolan confirmed that his client would not submit to an EUO and that a deposition would give Kemper everything that it was entitled to receive. Kemper confirmed Mr. Dolan's refusal to submit to an EUO in a letter dated February 15, 2012. On the following day, Kemper formally denied Mr. Dolan's claim for UIM benefits.

At some point thereafter, Mr. Dolan was found to be incompetent to stand trial against criminal charges in an apparently unrelated case. As a result of that finding, the circuit court stayed Mr. Dolan's lawsuit against Ms. Dolan (the driver) and Kemper. Even after Mr. Dolan was later found to have regained his competence, the court continued the stay, so that Kemper could file a complaint for declaratory relief.

On May 11, 2016, Kemper filed its complaint. In brief, Kemper asked the court to declare that the policy required Mr. Dolan to submit to an EUO as a prerequisite to receiving UIM coverage and that Mr. Dolan had breached the contract with Kemper by refusing to submit to an EUO. Pending the adjudication of Kemper's complaint for declaratory relief, the circuit court continued the stay of Mr. Dolan's tort claim against the driver and his breach of contract claim against Kemper.

Although the circuit court initially denied Kemper's motion for summary judgment, Kemper and Mr. Dolan eventually agreed upon a set of stipulations concerning

5

the universe of relevant facts. The parties submitted the stipulations to the circuit court, along with legal argument on their respective positions.

On March 20, 2017, the circuit court conducted what was nominally a bench trial, but was really more in the nature of a hearing on a summary judgment motion, because no facts were in dispute.[4] After the hearing, the court issued a written declaratory judgment, in which it concluded:

> that submitting to an EUO administered by Plaintiff Kemper was a condition precedent to him receiving UIM benefits under the insurance policy issued by Plaintiff Kemper, that Defendant Gary Dolan's failure to do so amounted to a material breach of the insurance contract, and that Defendant Gary Dolan is not entitled to receive UIM benefits under the insurance policy issued by Plaintiff Kemper.

Mr. Dolan noted a timely appeal.

### QUESTION PRESENTED

Mr. Dolan presents one question for our review:

Did the trial [c]ourt err by finding that Appellant had breached his contract with Appellee by filing a law suit against Appellee before submitting to an Examination Under Oath?

Mr. Dolan's question misstates the circuit court's conclusion, as well as Kemper's coverage position.

Kemper did not deny coverage because Mr. Dolan had filed suit before submitting to an EUO. Although the express language of the Kemper policy prohibits legal action against Kemper unless the insured has complied with all of the policy terms (including

---

[4] On pages 2 and 9 of his brief, Mr. Dolan agrees that "only legal findings were made" at the hearing.

6

the term requiring the insured to submit to an EUO), Kemper attempted to persuade Mr. Dolan to submit to an EUO even after he had filed suit. Kemper denied coverage because of Mr. Dolan's continued refusal to submit to an EUO, not because he had filed suit before submitting to an EUO.

Similarly, the circuit court did not conclude that Mr. Dolan breached the contract by filing suit against Kemper before he had submitted to an EUO. To the contrary, in remarks in open court, the circuit court recognized that even after he had filed suit, Mr. Dolan could have complied with the request for an EUO by dismissing the case without prejudice (which he could safely do, as the statute of limitations would not run for almost two years), submitting to the EUO, and then refiling.

The circuit court's conclusions, accurately characterized, were (1) that submitting to an EUO was a condition precedent to receiving UIM benefits under the policy and (2) that Mr. Dolan materially breached the policy by refusing to submit to an EUO – whether before or after he filed suit. Consequently, we shall rephrase the question presented to accurately reflect the court's conclusions:

> Did the circuit court err in concluding that, by failing to submit to an EUO, Mr. Dolan failed to satisfy a condition precedent to receiving benefits under the Kemper policy and materially breached the insurance contract?

For the reasons set forth below, we answer that question in the negative and affirm.

## STANDARD OF REVIEW

Maryland Rule 8-131(c) governs "[o]ur review of a trial court's declaratory judgment regarding the scope of coverage under an automobile insurance policy[.]"

7

*Agency Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 193 Md. App. 666, 671 (2010) (citing

*Mundey v. Erie Ins. Grp.*, 167 Md. App. 444, 450-51 (2006), *aff'd*, 396 Md. 656 (2007)).

Rule 8-131(c) states:

> When an action has been tried without a jury, the appellate court will
> review the case on both the law and the evidence. It will not set aside the
> judgment of the trial court on the evidence unless clearly erroneous, and
> will give due regard to the opportunity of the trial court to judge the
> credibility of the witnesses.

Because the parties stipulated to the relevant facts, the court made no factual

findings. The sole issue before us is the correctness of the conclusions of law. We

conduct a *de novo* review of those conclusions. *Bartlett v. Portfolio Recovery Assocs.,*

*LLC*, 438 Md. 255, 272 (2014) ("[i]t is well established that pure conclusions of law are

reviewed de novo"); *Agency Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 193 Md. App. at

672.

## DISCUSSION

Automobile insurance policies commonly contain a provision requiring an insured

to submit to an EUO. "Generally, during an EUO, an insurer is 'entitled to conduct a

searching examination, though all questions should be confined to matters relevant and

material to the loss.'" *Phillips v. Allstate Indemn. Co*., 156 Md. App. 729, 743 (2004)

(quoting 13 COUCH ON INSURANCE § 196:11, at 196-20 (3d ed. 2003)). The purpose of

an EUO is to assist in the evaluation of a claim, so that the insurer can decide whether to

pay it without the necessity of litigation. *See Goldman v. State Farm Fire Gen. Ins. Co*.,

660 So. 2d 300, 305 (Fla. Dist. Ct. App. 1995); *Brizuela v. CalFarm Ins. Co*., 10 Cal.

Rptr. 3d 661, 671-72 (Cal. Ct. App. 2004). An EUO may also assist in protecting an

insurer against false claims. *Fineberg v. State Farm Fire & Cas. Co.*, 438 S.E.2d 754, 755 (N.C. Ct. App. 1994). While no Maryland case has discussed the precise contours of an EUO, courts from other states have observed that an EUO is not subject to the rules of civil procedure. *See, e.g.*, *Brizuela v. CalFarm Ins. Co.*, 10 Cal. Rptr. 3d at 672. Thus, for example, the insured's attorney has no right to examine the insured at an EUO. *Id.*

It is beyond any dispute that an insured breaches the insurance contract when he or she refuses to submit to an EUO. In *Phillips v. Allstate Indemn. Co.*, 156 Md. App. at 743, this Court held that an insured breached the contract when he appeared at an EUO, but refused "to answer relevant, material questions." We reasoned that the failure to answer "questions that are relevant and material to an insurer's liability for a loss and the extent of that loss" "constitutes a failure to comply with a policy requirement to submit to an EUO." *Id.* at 745. Furthermore, we concluded that the breach entitles the insurer to disclaim coverage even in the absence of a showing of actual prejudice. *Id.* at 746-47.[5]

---

[5] Under § 19-110 of the Insurance Article, "[a]n insurer may disclaim coverage on *a liability insurance policy* on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer." (Emphasis added.) A liability insurance policy, however, is a policy issued to protect an insured against the claims of injured third parties. *See Phillips v. Allstate Indemn. Co.*, 156 Md. App. at 746. Thus, in the cases that address § 19-110, "the issue has been whether an insurer could disclaim coverage and not pay benefits to a third party when the insured either failed to cooperate or to give timely notice." *Id.* *Phillips* did not involve a third party's claim against the insured, but rather a so-called "first-party" claim by the insured himself against his own insurer. *Id.* at 747. Therefore § 19-110 did not apply. *Id.*

If a party commits a material breach of an insurance contract by appearing at an EUO but failing to answer some relevant and material questions, then the total failure to submit to an EUO at all must certainly constitute a material breach as well. Indeed, numerous courts from other states have held that the unexcused failure to appear at an EUO constitutes a material breach that permits an insurer to disclaim coverage. *Laine v. Allstate Ins. Co.*, 355 F. Supp. 2d 1303, 1306 (N.D. Fla. 2005); *Wiles v. Capitol Indem. Corp.*, 215 F. Supp. 2d 1029, 1031 (E.D. Mo. 2001); *Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d 206, 218 (E.D.N.Y. 2014), *aff'd*, 626 F. App'x 316 (2d Cir. 2015); *Standard Mut. Ins. Co. v. Boyd*, 452 N.E.2d 1074, 1079 (Ind. Ct. App. 1983); *Mello v. Hingham Mut. Fire Ins. Co.*, 656 N.E.2d 1247, 1250 n.5 (Mass. 1995); *see also U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 490 (5th Cir. 1992) ("the failure to submit to examination voids the policy as a matter of law") (applying Mississippi law); *Archie v. State Farm Fire & Cas. Co.*, 813 F. Supp. 1208, 1212 (S.D. Miss. 1992) (stating that "an insured's refusal to submit to an examination under oath in violation of the express provisions of the insurance policy renders the policy void"); *Lorenzo-Martinez v. Safety Ins. Co.*, 790 N.E.2d 692, 695-96 (Mass. App. Ct. 2003) (stating that "a wilful, unexcused refusal to submit to an examination under oath, without proof of actual prejudice to the insurer's interests resulting from the refusal, constitutes a material breach of the insurance contract discharging the insurer's liability under the contract"); *Azeem v. Colonial Assur. Co.*, 96 A.D.2d 123, 124 (N.Y. App. Div. 1983) ("Plaintiff's failure to comply with the terms of the policy provision requiring submission to an

10

examination under oath constitutes a material breach of the insurance contract and is an absolute defense to suit on the policy"), *aff'd*, 62 N.Y.2d 951 (1984).[6]

It is also beyond any dispute that an insured cannot pursue a claim against an insurer if he or she has failed to satisfy a condition precedent to coverage. For example, in *Huntt v. State Farm Mut. Auto. Ins. Co.*, 72 Md. App. 189, 198 (1987), this Court affirmed the entry of summary judgment against an insured who had failed to comply with a contractual condition precedent that required her to submit to a physical examination that would allow the insurer to evaluate her PIP claim.[7] Where an insured has failed to comply with a contractual condition precedent requiring submission to an EUO, numerous courts from other states have held that the insurer may deny coverage. *Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 267 (Ala. 1998); *Goldman v. State Farm Fire Gen'l Ins. Co.*, 660 So. 2d at 304; *Watson v. Nat'l Surety Corp.*, 468 N.W.2d 448, 451 (Iowa 1991); *Mello v. Hingham Mut. Fire Ins. Co.*, 656 N.E.2d at 1250; *Baker v. Independent Fire Ins. Co.*, 405 S.E.2d 778, 778-79 (N.C. Ct. App. 1991); *Krigsman v.*

---

[6] Mr. Dolan appears to argue that, in view of a public policy that favors the provision of compensation to innocent victims of motor vehicle accidents, a provision requiring submission to an EUO is "unenforceable." Mr. Dolan did not make that argument in the circuit court, so it is not before us. *See* Md. Rule 8-131(a). Even if it were before us, it would be completely untenable in light of this Court's decision in *Phillips*, which upheld the denial of coverage because of an insured's refusal to answer relevant questions at an EUO.

[7] "PIP" refers to personal injury protection, a type of no-fault insurance that motor-vehicle liability insurance policies are required to contain. *See* Md. Code (1996, 2017 Repl. Vol.), § 19-505 of the Insurance Article.

11

*Progressive Northern Ins. Co.*, 864 A.2d 330, 334 (N.H. 2005); *Spears v. Tenn. Farmers Mut. Ins. Co.*, 300 S.W.3d 671, 680 (Tenn. Ct. App. 2009).

In arguing that he did not breach the contract or fail to satisfy a condition precedent when he refused to submit to an EUO, Mr. Dolan focuses on Section III, Part E, of the Kemper policy. To reiterate, that section states, in pertinent part, that:

> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

> \* \* \*

> B. A person seeking any coverage must:

> 1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

> \* \* \*

> 3. Submit, as often as we reasonably require:

> \* \* \*

> b. To examination under oath and subscribe the same.

Citing the first sentence of this provision ("We have no duty to provide coverage under this policy unless" etc.), Mr. Dolan argues that submitting to an EUO is a condition to recovering benefits under the policy, not to pursuing a lawsuit. One need not read any farther than the next page of the policy to see that his argument is incorrect.

On that next page, Section III, Part F, states, in pertinent part, that: "No legal action may be brought against us until there has been full compliance with all the terms of this policy." Section III, Part E, paragraph B(3)(b), requiring an insured to submit to an EUO, is obviously a "term" of the Kemper policy. Therefore, no legal action may be

brought against Kemper until an insured has submitted to an EUO, if one has been requested.

Mr. Dolan posits a hypothetical scenario under which an insured submits to an EUO before filing suit, but the insurer properly requests a second EUO after suit has been filed. In his view, the insurer's right to require multiple EUOs, both before and after the commencement of litigation, demonstrates that submitting to an EUO cannot be a condition precedent to filing suit. We agree that submitting to a post-litigation EUO could not possibly be a condition precedent to filing a lawsuit that had already been filed. Under Section III, Part E, of the Kemper policy, however, it would be a condition precedent to Kemper's "duty to provide coverage": Kemper might have the right to deny coverage if an insured refuses to submit to a second EUO after he or she has filed suit.[8]

Mr. Dolan contends that the language of the Kemper policy ("No legal action may be brought against [Kemper] until there has been full compliance with all the terms of this policy") does not create a condition precedent. In advancing that argument, Mr. Dolan acknowledges that "'no particular form of words is necessary in order to create an express condition'" (Brief for Appellant at 10 (quoting *Chirichella v. Erwin*, 270 Md. 178, 182 (1973)), but he argues that conditions are commonly created by the use of words like "if," "provided that," "when," "after," "as soon as, " or "subject to," which the Kemper policy does not use. The Kemper policy, however, does use the word "until,"

---

[8] The same would be true if Kemper did not request an EUO until after an insured had filed suit: submitting to a post-filing EUO would be a condition to the insured's right to recover benefits under the policy.

13

which creates as much of a temporal condition as words like "when," "after," or "as soon as." Furthermore, "until" is often used interchangeably with "unless," a conditional term that in logic is equivalent to "if not." The pertinent language, therefore, unquestionably creates a condition precedent.

In an effort to establish that he did not fail to satisfy a condition precedent to bringing a legal action against Kemper, Mr. Dolan relies on *McCullough v. Travelers Cos.*, 424 N.W.2d 542 (Minn. 1988). A review of the facts of *McCullough* establishes that it differs markedly from this case.

In *McCullough* the insured's counsel informed Travelers that he would not be available for an EUO on the date that the insurer had unilaterally selected. *Id.* at 543-44. The parties agreed to postpone the EUO, and neither made any immediate attempt to reschedule it. *Id.* at 544. The insured filed suit a few weeks later, and Travelers responded by asserting that the suit was barred because of the insured's failure to comply with a condition purportedly requiring him to submit to an EUO before filing suit. *Id.* The insured responded by expressing his willingness to submit to an EUO, and the litigation moved forward into discovery. *Id.* Thereafter, "Travelers made no further attempt to schedule an examination of the insured." *Id.* Nonetheless, Travelers persuaded the trial court to enter summary judgment in its favor because of the insured's failure to submit to an EUO. *Id.*

On appeal, the Supreme Court of Minnesota held that the language of the Travelers policy ("'[n]o suit or action on this policy for the recovery of any claim shall be *sustainable* in any court . . . unless'") (emphasis added) did not bar a suit or require an

14

oral examination before the filing of a suit. "Under this policy," the court held, "an oral examination under oath is not a condition precedent to suit." *Id.* "Rather," the requirement of an examination was "a condition to *recovery* under the policy." *Id.* (emphasis added). Thus McCullough did not breach the insurance contract by filing suit before submitting to an EUO. *Id.*

Nor was there any evidence that McCullough had refused to be examined under oath. *Id.* at 545. The cancellation of one EUO because of counsel's unavailability did not amount to a failure to cooperate, and the insured had expressly stated that he was available for examination shortly after he filed suit. *Id.* In the Minnesota court's view, "[t]he normal cooperation expected of opposing professional counsel was simply not exhibited by either side in this case." *Id.*

It would be something of an understatement to say that this case is unlike *McCullough*. First, unlike the Travelers policy (which said that an action on the policy was not "sustainable" unless the insured complied with all requirements of the policy), the Kemper policy plainly states that "[n]o legal action may be brought" at all "until there has been full compliance with all the terms of this policy." Therefore, the Kemper policy expressly creates a condition precedent to the commencement of a legal action, and not merely to a recovery under the policy. Second, unlike the insured in *McCullough* (who failed to attend an EUO only because the insurer had unilaterally selected a date on which his counsel was unavailable, and who had expressed his willingness to submit to an EUO), Mr. Dolan repeatedly failed to cooperate in the scheduling of an EUO and

15

categorically refused to submit to an EUO after he had filed suit. *McCullough* does not advance Mr. Dolan's case.

Mr. Dolan claims that he did not actually refuse to submit to an EUO, because, he says, he never refused to appear for a *scheduled* examination. His claim is devoid of merit. The stipulated facts show that, on no fewer than four occasions after Mr. Dolan had made a formal claim against the policy, Kemper requested dates for an EUO. On one occasion, Mr. Dolan's counsel agreed that Kemper was entitled to an EUO. On another, Mr. Dolan's counsel said that an assistant at the firm would secure a date for the EUO. Yet, Mr. Dolan's counsel supplied no dates. Instead, Mr. Dolan filed suit against Kemper, and his attorneys took the position that the insurer was no longer entitled to an EUO. On these facts, it is inarguable that Mr. Dolan expressed a determination not to submit to an EUO – i.e., he refused. *See Webster's Encyclopedic Unabridged Dictionary of the English Language* 1207 (1989). "[T]he record is indicative of a pattern of non-co-operation for which no reasonable excuse for noncompliance has been proffered[.]" *Bulzomi v. N.Y. Cent. Mut. Fire Ins. Co.*, 92 A.D.2d 878, 878-79 (N.Y. App. Div. 1983).

Finally, Mr. Dolan argues that Kemper was able to obtain the substantial equivalent of an EUO when it took his deposition. Nonetheless, he cites no legal authority for the proposition that a deposition can substitute for an EUO. The absence of authority is alone sufficient to allow us to deem the argument to have been waived and to decline to address it. *Anderson v. Litzenberg*, 115 Md. App. 549, 577-78 (1997) (citing *Oroian v. Allstate Ins. Co.*, 62 Md. App. 654, 658 (1985)); *accord Brass Metal Prods., Inc. v. E-J Enterprises, Inc.*, 189 Md. App. 310, 343 (2009); *Livingstone v. Greater*

16

*Washington Anesthesiology & Pain Consultants, P.C.*, 187 Md. App. 346, 392-93 (2009). Nonetheless, we shall exercise our discretion to consider the argument.

It is unsurprising that Mr. Dolan cites no legal authority for his position, because numerous cases hold that an insured cannot comply with the requirement of submitting to an EUO by submitting to a discovery deposition. *See, e.g.*, *Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d at 219; *Laine v. Allstate Ins. Co.*, 355 F. Supp. 2d at 1306; *Archie v. State Farm Fire & Cas. Co.*, 813 F. Supp. at 1213; *Nationwide Ins. Co. v. Nilsen*, 745 So. 2d at 269; *Brizuela v. CalFarm Ins. Co.*, 10 Cal. Rptr. 3d at 671-72; *Goldman v. State Farm Fire Gen'l Ins. Co.*, 660 So. 2d at 305; *Allen v. Michigan Basic Prop. Ins. Co.*, 640 N.W.2d 903, 908 n.8 (Mich. Ct. App. 2001); *Spears v. Tenn. Farmers Mut. Ins. Co.*, 300 S.W.3d at 682; *see also Wiles v. Capitol Indem. Corp.*, 215 F. Supp. 2d at 1031-32 (implying that deposition did not cure material breach that resulted from failure to submit to EUO); *Dyno-Bite, Inc. v. Travelers Cos.*, 80 A.D.2d 471, 474 (N.Y. App. Div. 1981) ("[t]he right to examine under the co-operation clause of the insurance policy, however, is much broader than the right of discovery under the [rules of civil procedure]").

Submitting to a deposition will not satisfy the requirement of submitting to an EUO, because "[a]n examination under oath and a pretrial deposition 'serve vastly different purposes.'" *Brizuela v. CalFarm Ins. Co.*, 10 Cal. Rptr. 3d at 671 (quoting *Goldman v. State Farm Fire Gen'l Ins. Co.*, 660 So. 2d at 305). "The purpose of an examination under oath is to obtain information as part of the insurer's investigation of the insured's claim" – to assist the insurer in deciding whether to allow or deny the claim

– "rather than for the litigation." *Id.* at 671-72. In addition, the procedures are different, because an EUO is not strictly subject to the rules of civil procedure (*id.* at 672), such as the rules concerning the form and substance of a notice of deposition (Md. Rule 2-412), the place where a deposition may occur (Md. Rule 2-413), the persons who may attend the deposition (Md. Rule 2-413.1), and the procedure to be followed at and after the deposition (Md. Rule 2-415). In short, Mr. Dolan did not comply with his contractual obligation to submit to an EUO when he complied with his obligation under the Maryland Rules to submit to a pretrial deposition.[9]

In his reply brief, Mr. Dolan argues that the term "examination under oath" is ambiguous and, hence, that that ambiguity should be construed against the insurer. Ordinarily, we do not consider arguments that a party raises for the first time in a reply brief. *Jones v. State*, 379 Md. 704, 713 (2004). But even if we were to consider it, we would reject it, because there are literally dozens of reported decisions, scholarly publications, and other authorities that describe what an EUO is. The Kemper policy is written against the backdrop of that extensive body of law. Its use of the term "examination under oath" is not ambiguous.

---

[9] Some cases assert that in an EUO, unlike a deposition, an insured has an obligation to volunteer information. *See*, *e.g.*, *Brizuela v. CalFarm Ins. Co.*, 10 Cal. Rptr. 3d at 672. Some cases also assert that in an EUO an insurer has or may have the right to question an insured outside the presence of other insureds (see *Goldman v. State Farm Fire Gen'l Ins. Co.*, 660 So. 2d at 305), which could not occur in a deposition, at least if the other insureds are parties. We express no view about whether those assertions are consistent with Maryland law.

In summary, the circuit court correctly concluded that, by refusing to submit to an EUO, Mr. Dolan breached the insurance contract with Kemper and failed to satisfy a condition precedent to the recovery of benefits.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**